UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
KEYON ALLEYNE,

      Petitioner,

      -v-

STEVEN RACETTE,

      Respondent.

-----------------------------------------------------X

FEUERSTEIN, S., Senior District Judge:

Case No. 15-cv-1915 (SFJ)
**Memorandum and Order**

**FILED**
**CLERK**

5/28/2020 3:48 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

I.    <u>Introduction</u>

      Presently before the Court is the Petition for Writ of Habeas Corpus, pursuant to 28

U.S.C. § 2254,[1] of Petitioner Keyon Alleyne ("Petitioner" or "Alleyne"), seeking "relief to

which he may be entitled in this proceeding."  (*See* ECF No. 1 ("Petition") at 9.)  Respondent

Steven Racette ("Respondent") opposes the Petition asserting, *inter alia*, that Petitioner "raises

the same ineffective assistance of counsel claim which he raised on direct appeal and in his leave

application to the New York State Court of Appeals, as well as the same summation error claim

that he raised on direct appeal."  (*See* Opp'n Aff. (ECF No. 6 at 1-7), ¶12; *see also* Opp'n (ECF

No. 6 at 8-31).)  For the reasons that follow, the Petition is DENIED.

II.    <u>Background</u>

      The following facts are adduced from the instant Petition and Opposition, and the

underlying record,[2] the parties' familiarity with which the Court assumes.

---

[1]  For convenience and unless otherwise noted, further references to 28 U.S.C. § 2254 will
simply be to the code section, *i.e.*, "§ 2254".

[2]  This background is primarily drawn from the state court 2011 trial transcripts.  (*See* ECF Nos.
6-2, 6-3, and 6-4 (collectively Ex. H, *attached* to Opp'n).)  Where the trial transcripts are cited,
the Court will cite to the relevant transcript's page number(s) (*e.g.*, "[Month] [day] Trial Tr.:
[page:line(s)]") and not those generated by the Court's Electronic Case Filing (ECF) system.

### A. Facts Giving Rise to Petitioner's Conviction

At approximately 8:30 a.m. on August 20, 2009, a bright and sunny day, Petitioner exited a car, a red or burgundy late-model Honda Accord (hereafter, the "Getaway Car" or "Car"), and approached Keyno Gallimore (Gallimore") on a corner in Brooklyn, New York, brandishing a black handgun and ordering Gallimore not to move.  While pointing the gun at Gallimore's chest, Petitioner snatched a chain from around Gallimore's neck and Petitioner's co-defendant, Dawoud Carrington ("Carrington"), took Gallimore's iPhone from his pocket (hereafter, the "Robbery").  At the time, Petitioner was wearing a red hat emblazoned with a "C", a large white tee-shirt, and black pants, and Carrington was wearing a "durag", a white tank top, and shorts; nothing was obstructing either Petitioner's or Carrington's face.  Gallimore believed the Robbery lasted no more than five (5) minutes.

As the Robbery was occurring, a pedestrian, Shaundel Eastman ("Eastman") was walking towards the corner where it was transpiring.  When she was approximately six (6) houses away from the corner, Eastman saw one man pull a gun on another, causing her to back up; she did not have a clear view of Petitioner's or Carrington's faces.  While backing up, she passed the Getaway Car, which Eastman described as an older, red-burgundy Toyota or Honda.  As she passed the Car, Eastman stated to the light-skinned, slim female sitting in it that a robbery was happening, but she did not have her cell phone with her.  In response, the woman advised Eastman to leave the area.  As Eastman was doing so, Petitioner and Carrington began approaching the Car; she noticed the woman speak to the men as they advanced, who then looked up at Eastman, but proceeded to enter the Getaway Car, which then drove away.  Later, on August 27, 2009, Eastman identified Bowen as the getaway driver (hereafter, the "Driver")

from a group of photographs shown to her by Detective Ellis ("Ellis"), who led the investigation into the Robbery; she never identified Petitioner as the gunman in the Robbery.

Immediately after the Robbery, Gallimore ran into the street to try to read the license plate number on the Getaway Car; he was able to read some of the numbers.  He then called 911 to report the incident, describing: what occurred; what Petitioner and Carrington were wearing; and, a partial plate number for the Car.  Since Ellis was assigned as lead detective on the Robbery investigation, Gallimore later also provided Ellis with a description of Petitioner.

About forty-five (45) minutes after the Robbery, Petitioner and Carrington entered a neighborhood bodega, located approximately six (6) blocks from the Robbery location. Unbeknownst to them, an off-duty detective, Garnett Golding ("Golding"), who was unarmed at the time, was also in the store; he observed the handle of a black handgun poking out of one of Petitioner's back pants pockets.  Fearing that a robbery was about to occur, Golding exited the bodega and called 911.  While on that phone call, Golding observed Petitioner and Carrington leave the bodega and enter the Getaway Car.  When the police arrived, Golding reported to them the license plate number of the Car, as well as provided descriptions of Petitioner and Carrington, which matched the descriptions Gallimore previously gave to the police.  (Hereafter, the "Bodega Incident".)  A surveillance video recording captured Petitioner's and Carrington's presence in the bodega (hereafter, the "Video").

Using the Getaway Car's license plate numbers, the police were able to trace the Car to Janel Parande, its owner, who informed the police that she had lent the Car to Carrington.  That information helped facilitate the police's investigation of the Robbery incident, eventually leading the police to Petitioner.

On August 27, 2009, Gallimore went to the police station to look at a group of photographs, which Ellis believed may have included Petitioner, Carrington, or the Driver.  From those photo arrays, Gallimore identified: a male he believed looked similar to Petitioner, but which was not him; and, a female he believed looked like the Driver, but who was Parande.  On September 2, 2009, Gallimore went back to the police station to view a lineup assembled by Ellis and which consisted of six (6) similar-looking males, all wearing dark baseball hats backwards and black tee-shirts.  At that viewing, Gallimore identified Petitioner as the Robbery gunman. Ellis did not conduct any other lineups.

### B.  State Court Procedural Background

Thereafter and pursuant to Kings Count Indictment Number 8252/2009, Petitioner was charged[3] with: Robbery in the First Degree (N.Y. Penal Law § 160.15[4]); Robbery in the Second Degree (N.Y. Penal Law § 160.10[1]); Robbery in the Third Degree (N.Y. Penal Law § 160.05); Grand Larceny in the Fourth Degree (N.Y. Penal Law § 155.30[5]); Petit Larceny (N.Y. Penal Law § 155.25); and, Unlawful Possession of Marihuana (N.Y. Penal Law § 221.05) (two counts).  A jury trial commenced in May 2011 in the Kings County Court (hereafter, the "County Court" or "trial court").  The People's case was, essentially, a one-eyewitness identification case, with its witness, Gallimore, identifying Petitioner in court as the gunman who grabbed his necklace from him.  More specifically, Gallimore testified, *inter alia*, that: the Robbery occurred on a bright, sunny day; when Petitioner began walking toward him with the gun pointed at him, his view of Petitioner was not obstructed; Petitioner's face was not masked or otherwise covered;

---

[3]  Before trial: co-defendant Carrington pleaded guilty to Attempted Robbery in the First Degree (N.Y. Penal Law §§ 110.00/160.15[4]) and was sentenced to a seven-year prison term and a five-year term of post-release supervision; and, co-defendant Bowen, the Driver, pleaded guilty to Attempted Robbery in the Third Degree (N.Y. Penal Law §§ 110.00/160.05) and was sentenced to a five-year term of probation.

Petitioner held the gun to his chest as he grabbed Gallimore's necklace from his person and as Carrington went through Gallimore's pockets and took his iPhone; and, that while being robbed, he was looking right at Petitioner. (*See* May 23 Tr.:4A-10A.) Gallimore further testified about: viewing the photo arrays and, from them, picking out the persons he believed looked most like the Petitioner and the Driver, but not that they were the gunman or driver; and, unhesitantly identifying Petitioner from a subsequent lineup, which occurred approximately two (2) weeks after the Robbery. (*See id.* at 25A-28A.)

The People also called Ellis as a witness; he testified to, *inter alia*: the description he received of the Petitioner from Gallimore (*i.e.*, "[o]ne black male, approximately 6'2", approximately, 220 pounds, wearing a large white shirt, T-shirt[,] very clean, a red and black Cincinnati ball cap with 'C' on it, gold teeth, big earring in each ear, designer beard, white gold metal chain" (May 23 Tr.: 23:24-24:3)); receiving a report of the Bodega Incident, including a description of two black males, with one having a gun and wearing "a large white T-shirt [and] Cincinnati ball cap" (*id.* at 27:7-8), and the full license plate number of the vehicle in which the two males left; and, conducting a lineup which included Petitioner, who, when arrested, was wearing, *inter alia*, a large white tee-shirt, a red and black Cincinnati ball cap with a "C" on it, and a long white gold chain, and had "a designer beard, gold teeth, [and] big earring in each ear" (*id.* at 34:10-14). Ellis was also shown the Video and asked to identify Petitioner in it, which he did. (*See id.* at 53:3-12.)

The People further called Parande, the Car owner, who: identified Petitioner, having testified she knew him as a friend of Carrington, her former-boyfriend; testified that on a few occasions she and Carrington had socialized with Petitioner and his former girlfriend, Marsha Bowen, of whom she gave a general physical description and later identified from an admitted

photograph; identified Carrington from an admitted photograph; further testified that she owned a 1997 Honda Accord with four (4) doors, which she then identified from an admitted photograph; and, further identified Petitioner and Carrington in the Video.

In addition, the People called Eastman, who testified: to walking towards the scene of the Robbery, but then backing away from same when she realized a robbery by two men was underway; that as she was backing away, she passed a red-burgundy, older model Toyota or Honda in which a light-skinned female was sitting in the driver's seat; through the car's open window, she stated to that female her belief that a robbery was occurring, but that she did not have her mobile phone with her; the female driver advised her to leave the area; that, while she saw the two men robbing Gallimore, she did not see their faces and, therefore, never identified either as the robbers.  Eastman also identified Bowen as Driver of the Getaway Car.

The People's final witness was Golding.  Among other things, he testified:  to being off duty on August 20, 2009 when he was in the bodega at approximately 9:15 a.m.; observing two men entering the bodega, with one having a black gun in his right, rear pocket; that the man with the gun was approximately six (6) feet tall and was wearing a long, white tee-shirt, red baseball cap, and dark colored jeans; that, after observing the gun, he stepped outside the bodega to call 911 to report what he had observed and give a description of the two men getting into a four-door, burgundy colored Honda; giving the Getaway Car's license plate number to the police who responded to his 911 call; that he subsequently spoke with Ellis about what he observed; and, that he was unaware of the earlier Robbery.  Further, Golding also identified the Petitioner in the Video; similarly, he identified the Getaway Car from pictures placed into evidence.

Petitioner did not put on a defense.

In summation, defense counsel argued that the witnesses presented by the People were all in collusion to frame Petitioner and challenged the credibility and reliability of the People's witnesses, in particular the testimony of Gallimore's photo array picks versus his lineup identification, and of Parande, arguing that she willingly pointed the finger at others to avoid being accused of being involved in the Robbery.  In the People's summation, the prosecutor underscored the numerous opportunities Gallimore had to observe Petitioner, unobstructed and with heightened awareness given the adrenaline caused by the incident, which was sufficient to establish guilt beyond a reasonable doubt, and the testimony of Parande, Eastman, and Golding as corroborative evidence proving that Petitioner was the gunman who robbed Gallimore.

On May 27, 2011, Petitioner was convicted of one count of Robbery in the First Degree, pursuant to N.Y. Penal Law § 160.15[4], and one count of Unlawful Possession of Marihuana, pursuant to N.Y. Penal Law § 221.05.  On June 14, 2011, he was sentenced to a fifteen-year prison term and a five-year term of post-release supervision for the robbery conviction; for the marihuana conviction, he was sentenced to a $100 fine.

Petitioner filed a motion pursuant to New York Criminal Procedure Law[4] § 330.30 to set aside the verdict, which motion was denied on June 14, 2012.  (*See* Petition at 3 ("POINT 3").) "Petitioner did not pursue the [§] 330.30 motion any further since he had already filed his direct appeal at about the same time."  (*Id.*)

*C.  Petitioner's Direct Appeal*

On direct appeal, Petitioner's counseled brief raised three main arguments, two of which rested upon claims that his constitutional rights to a fair trial were denied, and another one premised upon the alleged denial of due process, *to wit*:

---

[4]  Hereafter, New York Criminal Procedure Law will be cited at "C.P.L. § [#]".

> (1.)  When only identity was at issue in this one-eyewitness case, Petitioner was denied a fair trial by: (a) lay-opinion testimony that he was the individual depicted in the Video; (b) Ellis's testimony reiterating Gallimore's description of the assailant and implying that Petitioner matched it; (c) testimony about accomplices not on trial, suggesting that the identification of Petitioner was reliable because the other robber had been correctly identified; and (d) relying upon hearsay testimony to name the getaway driver as Petitioner's girlfriend; (*see* Petitioner's Appellant Brief (hereafter, "State Appeal Br.")(ECF No. 6-1, Ex. A) at 17-35[5]);

> (2.)  Petitioner was denied his right to due process and a fair trial by the prosecutor's summation which urged jurors to consider how they would feel if they were being robbed, told them that he could "sit down confident" that he had proven his case beyond a reasonable doubt, commented on Petitioner's failure to present evidence, and misstated testimony connecting Petitioner to the Getaway Car (*see id.* at 36-43); and

> (3.)  A fifteen-year sentence was excessive given that no one was injured in the Robbery, the property taken was merely a gold chain and iPhone, and Petitioner had no prior felony convictions (*see id.* at 44-46).

Further, within the context of arguing the denial of a fair trial, Petitioner raised an alternative claim of ineffective assistance of counsel, premised upon "defense counsel's utter failure to object to [the prosecution's] bolstering evidence, its use on summation, and the absence of ameliorative charges." (*See id.* at 18; *see also id.* at 32-34 (Argument, Point I(D)) (hereafter, the "Direct Ineffective Assistance Claims").).  However, as to said Claims, Petitioner did not advance any arguments elucidating how he could overcome the strong presumption that counsel rendered adequate assistance or demonstrate that there was a reasonable probability that, but for trial counsel's alleged errors, the result of Petitioner's trial would have been different.  (*See id.*)  Petitioner also asserted that the trial court erred in failing to issue an ameliorative instruction

---

[5]  Note that the Court is citing to the relevant page numbers in the Brief and not those generated by the Court's ECF system.

regarding Carrington's and Bowen's absence from trial, arguing that had such an instruction been given, "the jury would have likely given less consideration to the prosecutor's bolstering arguments." (*Id.* at 31 (Argument, Point I(C)).)

The New York Supreme Court, Appellate Division, affirmed Petitioner's convictions, ruling:

> (1.)  as unpreserved and, in any event, without merit, Petitioner's arguments:
>
> > (a.)  that the trial court improperly permitted Ellis and Parande "to testify that, in their opinions, the person depicted in" the Video was Petitioner (further stating that although the County Court "failed to give the appropriate limiting instruction concerning the testimony, any error in that regard was harmless, as there was overwhelming evidence of the [Petitioner]'s guilt and no significant probability that the error contributed to the [Petitioner]'s convictions);
> >
> > (b.)  that it was error for the trial court to permit Ellis's testimony regarding Petitioner and Carrington, which improperly bolstered Gallimore's testimony identifying the Petitioner as one of his assailants and which constituted impermissible hearsay;
> >
> > (c.)  that the trial court erred in permitting Parande's testimony identifying Carrington; and
> >
> > (d.)  that the prosecutor made improper comments during summation (noting that "the evidence of [Petitioner]'s guilt was overwhelming" and "there was no significant probability that the error contributed to [Petitioner]'s convictions");
>
> (2.)  that while "the prosecutor improperly suggested in his summation that Parande's identification of [Carrington] enhanced [Gallimore]'s identification of the [Petitioner,] . . . the error was harmless under the circumstances of this case";
>
> (3.)  under both the New York State and the United States Constitutions, Petitioner was not deprived of his right to effective assistance of counsel, *see id.* (stating that "viewing defense counsel's performance in totality, counsel provided meaningful representation"); and,

9

(4.) "[t]he sentence imposed was not excessive."

*People v. Alleyne*, 114 A.D. 804, 804-05 (N.Y. App. Div. 2d Dep't 2014).

Petitioner's subsequent application to the Court of Appeals of New York for leave to appeal the appellate court's decision, in which he "raised the same grounds that he raised in his direct appeal" (Petition at 3 ("POINT 3")), was summarily denied. *See People v. Alleyne*, 23 N.Y.3d 1017 (Table) (2014). Petitioner did not commence any proceedings pursuant to C.P.L. §440. (*See* Petition at 8 ("Petitioner does not have any petitions or appeals pending in any court, state or federal, pertaining to the judgment under attack."); *see also, e.g.*, Opp'n Aff., ¶¶10-12.) Instead, he filed the present Petition.

    *D. The Instant Action*

       1. <u>Petitioner's Petition</u>

With a Petition dated March 25, 2015,[6] Petitioner petitions this Court for a writ of habeas corpus pursuant to § 2254. He challenges his state court conviction on two grounds: (1) ineffective assistance of counsel (*see* Petitioner at 3-4 ("GROUND 1")); and (2) the deprivation of due process and a fair trial (*see id.* at 5 ("GROUND 2")) based upon (a) statements made by the prosecutor in his summation (*see id.* at 5-7), and (b) the trial court's failure to issue an ameliorative jury instruction (*see id.* at 7-8).

    (*a*.) *Ground 1: Ineffective Assistance of Counsel*

Petitioner contends that defense counsel was ineffective for not objecting to: (1) the prosecution's alleged efforts to bolster Gallimore's identification of Petitioner because it occurred approximately two (2) weeks after the Robbery and because Gallimore had earlier

---

[6] The Petition was received in the Court's Pro Se Office on April 7, 2015. (*See* Petition at 1 (stamped with receipt date of "APR – 7  2015").)

indicted that another person looked like the gunman who robbed him (*see id.* at 4); (2) the bolstering of Gallimore's identification with the testimony of Ellis and Parande (*see id.*); (3) the prosecutor's alleged bolstering remarks made during the People's summation (*see id.*); and (4) the absence of ameliorative charges.  (*See id.*)

(*b*.)  *Ground 2:  Deprivation of a Fair Trial and Due Process*

Petitioner further argues that he was deprived of a fair trial because of statements made by the prosecutor in his summation, *to wit*: "continuously appealing to [the jurors'] fears, asking then to 'imagine' themselves as being robbed at gunpoint" (*id.* at 5); "vouch[ing] for the eyewitness's identification of the [P]etitioner," thereby "mak[ing] himself an 'unsworn' witness, who is not subject to cross-examination and whose credibility is buttressed by the 'authority and prestige' of his office" (*id.* at 6); "repeatedly stat[ing] . . . that 'the People's proof was unrebutted' insinuating that it was the [P]etitioner's burden to prove his own innocence" (*id.*); and, misstating Parande's testimony regarding her lending the Car to Carrington by stating she had lent the Car to Carrington and Petitioner, which misstatement "'dramati[c]ally' enhanced [the People's] case" (*see id.* at 6-7; *see also id.* at 8 (arguing that prosecution's alleged misconduct was "pronounced and persistent, with a pro[b]able cum[u]lative effect upon the jury which cannot be disregarded as inconsequential")).

Petitioner's due process claims, pursuant to the Fifth and Fourteenth Amendments (*see id.* at 5), are predicated upon the trial court's "fail[ure] to issue an ameliorative instruction to the jury addressing either of [P]etitioner's alleged accomplices, neither of whom was on trial."  (*Id.* at 7.)  He contends that had such an instruction been given, "the jury would have likely given less consideration to the prosecutor's bolstering arguments, but[] without the charge, the jury was free to assume that [P]etitioner's alleged accomplices had already been successfully

prosecuted." (*Id.* at 7-8 (citing relevant portion of New York Criminal Jury Instruction for "Accessorial Liability"[7]).)

> 2. <u>Respondent's Opposition</u>

In compliance with the Court's April 22, 2015 Order to Show Cause ("OSC") (*see* ECF No. 4), the Respondent filed his Opposition to the Petition, together with the Appellate Division briefs, Petitioner's leave application (*see* ECF No. 6-1), and the underlying trial transcripts (*see* ECF Nos. 6-2, 6-3, and 6-4; *see also* Opp'n Aff., ¶13).  He opposes both of Petitioner's grounds for granting habeas relief, asserting each is partially barred and without merit, as discussed with more particularity, below.

> (*a.*) *Ground 1:  Ineffective Assistance of Counsel*

First, Respondent asserts that to the extent Petitioner claims his trial attorney was ineffective for failing to object when Ellis described Petitioner's appearance on the day he was arrested and by failing to highlight to the jury that Gallimore had initially indicated that other individuals looked like his assailants, because Petitioner did not present those arguments on direct appeal,[8] they are unexhausted but procedurally barred.  (*See* Opp'n at 1-2 ("[Petitioner]

---

[7]  The jury charge that Petitioner suggests should have been given is:

> As you know, the People contend that the defendant acted in concert with a person who is not here on trial.  You must not speculate on the present status of that person.  You must not draw any inference from his/her absence.  And, you must not allow his/her absence to influence your verdict.  You are here to determine whether the People have proven beyond a reasonable doubt that the defendants is guilty of a charged crime.

(*Id.* at 7 (quoting portion of "Accessorial Liability" Jury Charge, C.J.I.2d N.Y., *available at* http://www.nycourts.gov/judges/cji/1-General/CJI2d.Accessorial_Liability.Rev.pdf).)

[8]  Respondent clarified that Petitioner raised these aspects of his ineffective assistance of counsel claim for the first time in his application for leave to appeal the Appellate Division's decision

was required to raise these claims on his direct appeal because they rely upon facts which appear in the trial record.")(citing *Bossert v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994)(if state prisoner had not exhausted his state remedies with respect to a claim, but no longer has a state forum in which to raise the claim, the claim is procedurally barred)).)  In any event, Respondent argues that Petitioner's entire ineffective assistance claim is meritless because:

> i.  Ellis did not testify that Gallimore had identified Petitioner as one of his assailants, but "that, as part of his investigation, which included an interview of Gallimore, [Ellis] received descriptions of [Petitioner] and co-defendant Carrington," which "testimony 'merely served as a necessary narrative of events leading to [Petitioner]'s arrest." (*id.* at 5 (quoting *People v. Smalls*, 293 A.D.2d 500, 501 (N.Y. App. Div. 2d Dep't 2002); further citation omitted));

> ii.  since Petitioner's "identity was the central issue in the case, . . . Ellis's testimony about what [Petitioner] looked like when he was arrested was entirely relevant" and "constituted permissible corroboration of Gallimore's identification" of Petitioner (*id.* at 5-6);

> iii.  contrary to Petitioner's assertion otherwise, "the trial record clearly establishes that [Petitioner's] counsel did argue during summation that Gallimore had initially identified two other individuals . . . as the assailants in the [R]obbery" (*id.* at 6 (citing May 26 Trial Tr. (Defense Summation) at 175-77));

---

affirming his conviction, but that since "a state court cannot decide the merits of a claim in an application for permission to appeal," such a claim is considered unexhausted.  (Opp'n at 2 n.1 (quoting *Padilla v. Keane*, 331 F. Supp.2d 209, 216 n.4 (S.D.N.Y. 2004); citing *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004)).)

       iv.  as to counsel's failure to object to the prosecutor's reference to the allegedly bolstering testimony on summation, since Ellis's testimony did not constitute improper bolstering of Gallimore's identification of Petitioner, "any remarks by the prosecutor about this testimony during summation were fair comment on the evidence" (*id.* at 7); and

       v.  regarding counsel's failure to request an instruction informing the jury it was free to reject Ellis's and Parande's lay-opinions that Petitioner appeared in the Video, while "the trial court did not give the appropriate limiting instruction concerning the testimony, [Petitioner] was not prejudiced given the overwhelming evidence of his guilt." (*Id.* at 8.)

     (*b.*)  *Ground 2:  Deprivation of a Fair Trial and Due Process*

   Second, Respondent contends that Petitioner's prosecutorial misconduct claim based upon improper summation comments[9] "is procedurally barred because the state appellate court denied the claim on the basis of an adequate and independent state ground."  (*Id.* at 9.)  Since the state court's refusal to review the merits of this claim rested upon an adequate and independent state ground, this Court is prohibited from considering the merits of Petitioner's constitutional

---

[9]  Respondent identifies four comments made by the prosecutor that Petitioner challenges, *i.e.*, comments which allegedly:

> (1) attempted to distract the jurors by appealing to their fears, asking then to imagine how they would feel if they were robbed at gunpoint; (2) vouched for the strength of the People's case, saying that he could "sit down confident" that he had proved [Petitioner]'s guilt beyond a reasonable doubt; (3) misstated to the jury that  . . . Parande had lent her car to . . .  Carrington and [Petitioner], when, in fact, Parande testified that she had only lent her car to . . . Carrington; and (4) shifted the burden of proof to [Petitioner] by commenting on [Petitioner]'s failure to "come forward with proof."

(*Id.* at 9.)

claim.  (*See id.* at 10 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977)).)

Respondent further asserts that, in the context of a § 2254 petition, claims premised upon prosecutorial misstatements in summations are subject to narrow review, *i.e.*, "distinguish[ing] between 'ordinary trial error of a prosecutor and that sort of egregious misconduct . . . [which] amount[s] to a denial of constitutional due process'" (*id.* at 11-12 (quoting *Sales v. Harris*, 675 F.2d 532, 541 (2d Cir. 1982); modification in Opp'n)), and that under such review, it cannot be said that the challenged summation statements deprived Petitioner of a fundamentally fair trial. (*See id.* at 12.)  Rather, much of the prosecutor's challenged summation was made in direct response to defense counsel's summation.  (*See id.* at 13-16 (specifically discussing how each challenged summation statement, when examined in the context of responding to defense counsel's summation, did not deprive Petitioner of a fair trial).)  To the extent Petitioner claims the prosecutor "repeatedly misstated a key piece of evidence pertaining to the getaway car," *i.e.*, that Parande testified to lending her car to Carrington *and* Petitioner, while Respondent concedes that Petitioner "is partially correct," he further contends that "a fair reading of the record" shows that the prosecutor's misstatement was not intentional, implying a lack of misconduct.  (*Id.* at 16 (quoting May 26 Trial Tr. (People's Summation) at 212).)

Respondent maintains the same holds true as to Petitioner's claim that the prosecutor improperly shifter the burden of proof to Petitioner.  He argues that "when the prosecutor stated that Parande 'knows the [Petitioner] [and that y]ou have not heard any evidence to the contrary,' the prosecutor was merely responding to defense counsel's challenge to Parande's credibility" (*id.* at 17 (quoting Trial Tr. (Summation) at 201)), which was a "fair comment on the evidence that was responsive to defense counsel's summation."  (*Id.*)  In any event, because the trial

"court instructed the jury that '[t]he burden of proof never shifts from the People to the [Petitioner]'" (*id.* (quoting Trial Tr. (Jury Charge) at 235)), "any prejudice caused by the prosecutor's remarks was cured by the court's charge." (*Id.*; *see also id.* at 18 (further claiming "[t]he court minimized any alleged prejudice by informing the jury, on several occasions, that the attorneys' arguments were not evidence" (citing Trial Tr. (Jury Charge) at 224-25)).)

Moreover, Respondent argues that the evidence of Petitioner's guilt was overwhelming, highlighting: Gallimore's clear identification of Petitioner; the People's presentation of Eastman, a witness to the Robbery who corroborated many aspects of Gallimore' testimony; Golding's testimony, including, *inter alia*, his corroborating testimony about the Getaway Car; Gallimore's and Golding's 911 calls, which were both played for the jury; the Video, which was viewed by the jury and corroborated Gallimore's description of his assailants; and, Parande's testimony regarding lending her car to Carrington and Carrington's friendship with Petitioner. (*See id.* at 18-20.)

Finally, Respondent opposes Petitioner's claim that he was denied a fair trial because the trial court did not give appropriate accomplice liability jury instructions, arguing that, in its discretion, the trial court instructed the jury:

> Evidence consists of the sworn testimony elicited both of direct and cross examination and any redirect and recross that followed of all the witnesses that testified in this trial, plus any exhibits marked and introduced into evidence, plus any stipulations entered into between the parties. *It is only on the basis of this evidence that you are to make your final determination of the facts*.

(*Id.* at 20 (quoting Trial Tr. (Jury Charge) at 225) (emphasis in Opp'n).) Respondent contends this instruction "adequately informed [the jury] that its verdict must be based solely upon the evidence presented." (*Id.*) Thus, if there was any error, given the overwhelming evidence of guilt, such error was harmless. (*See id.* at 21.)

3. <u>The Lack of a Reply</u>

Petitioner did not reply the Respondent's Opposition and has not otherwise supplemented his filings.  (*See* Case Docket, *in toto; see also* OSC, ¶6 (providing Petitioner the opportunity to file a reply to Respondent's response), and corresponding docket text (noting service of OSC upon Petitioner).)

III.   <u>Discussion</u>

*A.  Applicable Standards*

1. <u>The § 2254 Standard of Review</u>

"A petitioner in state custody pursuant to a criminal judgment of a state court is entitled to federal habeas relief only if he can establish that he is being confined in violation of the Constitution, laws, or treaties of the United States." *Crowder v. Ercole*, No. 09-cv-3401, 2012 WL 5386042, at *2 (E.D.N.Y. Nov. 2, 2012) (citing § 2254).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also McBride v. Perez,* No. 13-cv-4792, 2015 WL 5245072, at *8 (S.D.N.Y. June 25, 2015)(quoting *Estelle*).  A federal habeas court applies the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Terrell v. Kickbush*, No. 17-cv-7027, 2019 WL 3859512, at *4 (E.D.N.Y. Aug. 16, 2019).  In relevant part, § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.  The AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001)(quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Clapper v. Yelich*, No. 9:18-cv-102, 2019 WL 185684, at *4 (N.D.N.Y. Jan. 14, 2019)("Th[e AEDPA] standard is 'highly deferential' and 'demands that state-court decisions be given the benefit of the doubt.'" (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011)(per curiam); further citation omitted)); *McBride*, 2015 WL 5245072, at *8 ("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.'" (quoting *Estelle*, 502 U.S. at 67-68); *Martin v. Brown*, No. 08-cv-316, 2010 WL 1740432, at *7 (E.D.N.Y. Apr. 29, 2010)(quoting *Gilchrist*).

### (*a.*)  *§ 2254(d)(1)*

"'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"  *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005)(quoting *Williams*, 529 U.S. at 412; *see also Terrell*, 2019 WL 3859512, at *4.  "A ruling on the merits is 'contrary to' clearly established Supreme Court precedent 'if the state court arrives at a conclusion opposite to that reached by th[e] Court on a

question of law or . . . decides a case differently than th[e] Court has on a set of materially indistinguishable facts.'" *Crowder*, 2012 WL 5386042, at *2 (quoting *Williams*, 529 U.S. at 412-13)(brackets and ellipsis in *Crowder*).  "[A]n 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong: even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014)(internal quotation marks and citations omitted).  "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Id.* at 427 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.")). Moreover, "under the AEDPA, the factual findings of state courts are presumed to be correct." *McBride*, 2015 WL 5245072, at *8 (citing § 2254(e)(1), *and Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997)).  This presumption can be rebutted only upon "clear and convincing evidence." § 2254(e)(1); *see also McBride*, 2015 WL 5245072, at *8.  Finally, "[t]he Court is mindful that, as with all pro se pleadings, a habeas petition filed pro se is to be construed liberally." *Crowder*, 2012 WL 5386042, at *2 (citing *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983)); *see also Alonge v. Chappius*, No. 12-cv-542, 2019 WL 1642449, at *6 (E.D.N.Y. Apr. 16, 2019)("[T]he court must interpret petitioner's pleadings as raising the strongest arguments they suggest." (citing *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

*(b.)  § 2254(d)(2)*

As to a habeas challenge pursuant to § 2254(d)(2):

> The Supreme Court has made clear that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 301, 130 S. Ct. 841, 175 L. Ed.2d 738 (2010).  Where "[r]easonable minds reviewing the record might disagree" as to the relevant finding, that is not sufficient to supplant the state court's factual determination.  *Rice v. Collins,* 546 U.S. 333, 341-42, 126 S. Ct. 969, 163 L. Ed.2d 824 (2006).  Nevertheless, the state court's finding might represent an "unreasonable determination of the facts" where, for example, reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding, *see Wiggins v. Smith,* 539 U.S. 510, 528, 123 S. Ct. 2527, 156 L. Ed.2d 471 (2003), or where the court ignored highly probative and material evidence, *see Miller-El v. Cockrell,* 537 U.S. 322, 346, 123 S. Ct. 1029, 154 L. Ed.2d 931 (2003).
>
> Of course, AEDPA "sets forth a precondition to the grant of habeas relief . . . , not an entitlement to it," *Fry v. Pliler,* 551 U.S. 112, 119, 127 S. Ct. 2321, 168 L. Ed.2d 16 (2007), so *even if the standard set forth in section 2254(d)(2) is met, the petitioner still "bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated,"* *Epps v. Poole,* 687 F.3d 46, 50 (2d Cir. 2012).

*Cardoza v. Rock*, 731 F.3d 169, 177-78 (2d Cir. 2013)(emphasis added); *see also id*. at. 177 n.5 (noting: (1) the courts have had "fewer opportunities to consider what constitutes an 'unreasonable determination of the facts'" pursuant to § 2254(d)(2), compared with § 2254(d)(1); and, (2) the Supreme Court "has yet to explain" the interaction between § 2254(d)(2) and § 2254(e)(1), the subsection that creates a statutory presumption that a state court determination of a factual issue is correct); *cf.*, *Nowakowski v. New York*, No. 13-cv-3709, 2018 WL 6421056, at *6[10] (E.D.N.Y. Dec. 6, 2018) ("[F]or claims of 'unreasonable

---

[10]  The *Nowakowski* Court noted:

> The Supreme Court has twice declined to address the relationship between [§] 2254(d)(2) and [§] 2254(e)(1).  *Burt*, 571 U.S. at 18,

20

determination[s] of the facts' under [sub]paragraph (d)(2), an applicant bears the additional

burden of 'rebutting the state court's factual findings 'by clear and convincing evidence.'"

(quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013); further citation omitted)).

### 2.  Procedural Bars to Federal Habeas Review

#### (*a*.)  Failure to Exhaust

"A federal court may not grant habeas relief unless the petitioner has first exhausted his

claims in state court."  *McBride*, 2015 WL 5245072, at *6 (citing *O'Sullivan v. Boerckel*, 526

U.S. 838 (1999); § 2254(b)(1), (c)); *see also Allan v. Conway*, No. 08-cv-4894, 2012 WL 70839,

at *7 (E.D.N.Y. Jan. 10, 2012((same); *Reid v. Duncan*, No. 11-cv-3822, 2012 WL 5987719, at

*3 (S.D.N.Y. Sept. 25, 2012)(discussing two-step exhaustion analysis; collecting cases), *report*

*& recommendation adopted by* 2012 WL 5992090 (Nov. 30, 2012).  To do so, a petitioner "must

have 'fairly present[ed] his claim in each appropriate state court (including a state supreme court

with powers of discretionary review), thereby alerting that court to the federal nature of the

claim,' and thus 'giving the State the opportunity to pass upon and correct alleged violations of

its prisoners' federal rights.'"  *Id.* at *7 (quoting *Baldwin v. Reese*, 541 U.S. 27, 29

(2004)(internal quotation marks and citations omitted)); *see also Allan*, 2012 WL 70839, at *7

---

134 S. Ct. 10 ("We have not defined the precise relationship
between § 2254(d)(2) and § 2254(e)(1), and we need not do so
here . . . .  For present purposes, it is enough to reiterate "that a
state-court factual determination is not unreasonable merely
because the federal habeas court would have reached a different
conclusion in the first instance") (quoting, *Wood v. Allen*, 558 U.S.
290, 293, 130 S. Ct. 841, 175 L. Ed.2d 738 (2010)).  The Second
Circuit has likewise declined to do so.  *Garguilo v. Heath*, 586 F.
App'x 764, 766 n.1 (2d Cir. Oct.10, 2014); *Jones v. Murphy*, 694
F.3d 225, 238 n.4 (2d Cir. 2012), *cert. denied*, 568 U.S. 1165, 133
S. Ct. 1247, 185 L. Ed.2d 192 (2013).

*Nowakowski*, 2018 WL 6421056, at *6 n.6.

(quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (further citation omitted)).  "A habeas

petitioner who fails to meet a state's requirements to exhaust a claim will be barred from

asserting that claim in federal court."  *Id.*  (citing *Edwards v. Carpenter*, 529 U.S. 446, 451

(2000)); *Reid*, 2012 WL 5987719, at *4 (block quoting *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d

Cir. 2001)).

> However, "[f]or exhaustion purposes, a federal habeas court need
> not require that a federal claim be presented to a state court if it is
> clear that the state court would hold the claim procedurally
> barred."  *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)
> (internal quotation omitted).  "In such a case, a petitioner no longer
> has 'remedies available in the courts of the State' within the
> meaning of 28 U.S.C. § 2254(b)."  *Grey v. Hoke*, 933 F.2d 117,
> 120 (2d Cir. 1991).

*Id.*

### (*b.*)  *State Procedural Requirements*

A petitioner's federal claims may be procedurally barred from habeas review if they were

decided at the state level on "independent and adequate" state procedural grounds.  *Coleman*,

501 U.S. at 729-33; *see also, e.g., Michigan v. Long*, 463 U.S. 1032, 1041 (1983); *Nowakowski*,

2018 WL 6421056, at *6 (stating claims that a state court denied based upon an adequate and

independent state procedural rule bars federal habeas review).  A procedural rule is adequate if it

is "'firmly established and regularly followed' by the state in question."  *Garcia v. Lewis*, 188

F.3d 71, 77 (2d Cir. 1999)(citation omitted).  To be independent, the "state court must actually

have relied on the procedural bar as an independent basis for its disposition of the case" by

"'clearly and expressly' stat[ing] that its judgment rests on a state procedural bar."  *Harris v.*

*Reed*, 489 U.S. 255, 261-63, 265 n.12 (1989)(citations omitted).  Further, a state court's reliance

on an independent and adequate procedural bar forestalls habeas review even if the state court

also rejected the claim on the merits in the alternative.  *See, e.g., id.* at 264 n.10 (explaining that

"a state court need not fear reaching the merits of a federal claim in an alternative holding"
where it "explicitly invokes a state procedural bar rule as a separate basis for [its] decision");
*Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996).  It is only where a petitioner can demonstrate
"cause for the default and actual prejudice as a result of the alleged violation of federal law, or
demonstrate that the failure to consider the claim[] will result in a fundamental miscarriage of
justice" that a federal habeas court may review a procedurally barred claim.  *Coleman*, 501 U.S.
at 750; *see also Terrell*, 2019 WL 3859512, at *5; *Allan*, 2012 WL 70839, at *8.

>    B.  The Present Case

Respondent has not raised any jurisdictional challenges to Alleyne's Petition.  *See, e.g.*,
*Murray v. New York*, No. 13-cv-5212, 2016 WL 11600770, at *4 (S.D.N.Y. Apr. 4,
2016)(discussing federal habeas jurisdiction), *report & recommendation adopted by* 2019 WL
2502101 (S.D.N.Y. June 17, 2019); *see also supra* Part III(A)(2)(a)(discussing exhaustion).

>    1.  Petitioner's Ground 1:  Ineffective Assistance of Counsel

To establish that he was denied the right to effective assistance of counsel as guaranteed
by the Sixth Amendment of the United States Constitution, Petitioner must show that "counsel's
representation fell below an objective standard of reasonableness," *Strickland v. Washington*,
466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  As to
the first prong, *i.e.*, the deficiency prong, the inquiry "must be whether counsel's assistance was
reasonable considering all the circumstances." *Id.* at 688.  The "court deciding an actual
ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts
of the particular case, viewed as of the time of counsel's conduct" and must "determine whether
the [challenged acts or omissions] were outside the wide range of professionally competent

assistance." *Id.* at 690.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  Even if a petitioner overcomes this presumption, he must still prove the second prong, *i.e.*, the prejudice prong, by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.,* and it "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster,* 563 U.S.170, 189, 131 S. Ct. 1388 (2011) (internal quotation marks and citation omitted).

Moreover, in the context of a review under § 2254(d)(1), "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698–99, 122 S. Ct. 1843 (2002).  Rather, the petitioner must show "that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.*  Since "[t]he standards created by *Strickland* and §2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105; *see also Cullen,* 563 U.S. at 190 ("review of [state court]'s decision is . . . doubly deferential [because] [w]e take a highly deferential look at counsel's performance [under *Strickland*] through the deferential lens of § 2254(d)" (internal quotation marks and citations omitted)); *Acevedo v. Capra*, No. 13-cv-5579, 2014 WL 1236763, at *13 (E.D.N.Y. Mar. 25, 2014) ("To prevail, petitioner must show not only that counsel's performance fell below the *Strickland* standard of reasonableness, but also that the state court's application of the *Strickland* standard was itself unreasonable and not merely incorrect.").  Accordingly, "[w]hen §2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether

24

there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."

*Harrington,* 562 U.S. at 105.

(*a.*) *The Relevant* Strickland *Analysis*

While recognizing the strong presumption that defense counsel has rendered adequate assistance, *see Strickland*, 466 U.S. at 690, since a petitioner challenging the effective assistance of his counsel must satisfy both prongs of the *Strickland* test, *see Strickland*, 466 U.S. at 694; *see also McPherson v. Keyser*, No. 15-cv-1250, 2019 WL 6050279, at *7 (E.D.N.Y. Nov. 15, 2019)(stating that a § 2254 petitioner alleging ineffective assistance of counsel must prove both prongs of *Strickland*)(citing *Strickland*), the Court will assume, *arguendo*, that Petitioner has satisfied the deficiency prong of the test and, instead, focus its analysis on the prejudice prong, *i.e.*, whether there is a reasonable probability that, but for defense counsel's errors, the results of Petitioner's Robbery trial would have been different.

Further, although Petitioner's arguments in support of his ineffective assistance of counsel claim are disorganized, at best, (*see* Petition, Ground 1, at 3-4), the Court has ferreted out the following, *see Alonge*, 2019 WL 1642449, at *6; *Crowder*, 2012 WL 5386042, at *2, *to wit*, defense counsel's failure: to object to Ellis's and Parande's testimony as improper bolstering of Gallimore's identification of Petitioner; to object to the prosecutor's bolstering statements during his summation; to highlight, in his summation, the weakness of Gallimore's identification of Petitioner; and, to request limiting instructions regarding Ellis's and Parande's testimony.

i. Failure to Object re: Bolstering of Testimony

As Petitioner complains that his trial counsel "should have on numerous occasions objected to the People's tactless misconduct" (Petition at 4), but fails to identify those witnesses whose testimony is alleged to be problematic, the Court presumes Petitioner is referring to the

testimony of Ellis and Parande.  Notwithstanding Petitioner's assertion that Gallimore's testimony was "so feeble" that the prosecution called Ellis and Parande to salvage Gallimore's credibility, he has not articulated how there was a reasonable probability, that but for trial counsel's failure to object to the introduction of their bolstering testimony, the outcome of his Robbery trial would have been different.  Nor is it reasonably probable that Petitioner would be able to advance such an argument given the Appellate Court's alternative "in any event" rulings that Petitioner's complaints about the introduction of Ellis's and Parande's bolstering testimony were "without merit."  *Alleyne*, 114 A.D.3d at 804; *see also People v. Anderson*, 260 A.D.2d 387, 388 (N.Y. App. Div. 2d Dep't 1999)(stating that any inferential bolstering was harmless since the strong and positive identification testimony precluded any significant probability that the jury would have acquitted defendant had it not been for the error).

Moreover, since it is plain, when examined in context, that Ellis was testifying about his investigation of the Robbery, which included interviewing Gallimore, who provided Ellis with a description of Alleyne during said interview (*see* May 23 Trial Tr. 22-24), the admission of that testimony was not improper bolster as it "merely served as a necessary narrative of the events leading to [Petitioner]'s arrest."  *People v. Smalls*, 293 A.D.2d 500, 501 (N.Y. App. Div. 2d Dep't 2002); *see also People v. Romero*, 143 A.D.3d 1003, 1004 (N.Y. App. Div. 2d Dep't 2016)(finding police officers' testimony, challenged as improper bolstering testimony, "was admissible for the relevant purpose of establishing the reasons behind the police officers' actions and explaining the events that precipitated the defendant's arrest")(citing *People v. Mendoza*, 35 A.D.3d 507, 507 (N.Y. App. Div. 2d Dep't 2006); *People v. Gray*, 203 A.D2d 587 (N.Y. App. Div. 2d Dep't 1994) (holding testimony alleged to bolster identification evidence was properly admitted because it established the reasons for the police's actions and explained events

precipitating defendant's arrest).  Hence, because Petitioner is unable to show that, but for his trial counsel's failure to object to Ellis's and Parande's alleged bolstering testimony, the outcome of his Robbery trial would have been different, he cannot demonstrate prejudice pursuant to *Strickland* thereby precluding a finding of ineffective assistance of counsel pursuant to the Sixth Amendment.

ii.  Failure to Object re: Bolstering Statements During Summation

Petitioner claims that the People's use of bolstering on summation deprived him of his Sixth Amendment right to effective assistance of counsel.  (*See* Petition at 4.)  However, he does not present any explanation, rationale or argument why this is so.  (*See id.*)  Nor, as observed *supra*, does his counseled brief on direct appeal provide any assistance in developing this contention, *see e.g., Crowder*, 2012 WL 5386042, at *2, since, below, appellate counsel simply stated defense counsel "inexplicably failed to object to any of the People's improper bolstering." (State Appeal Br. at 32 (citing distinguishable cases to support contention that "failure to object to improper evidence has repeatedly contributed to ineffective assistance findings").)  It is likely defense counsel made no such objection because "a prosecutor 'has broad latitude' in responding to the defense counsel's summation or commenting on the trial testimony."  *People v. Nieves*, 2 A.D.3d 539, 540 (N.Y. App. Div. 2d Dep't 2003)(quoting *People v. Cariola*, 276 A.D.2d 800 (N.Y. App. Div. 2d Dep't 2000)).  In any event, Petitioner has failed to show any probability, let alone the requisite reasonable probability, that, but for trial counsel's error in not objecting to the prosecution's alleged improper bolstering during summation, the outcome of his Robbery trial would have been different.  *Cf.*, *People v. Isaac*, 137 A.D.3d 1164, 1165 (N.Y. App. Div. 2d Dep't 2016)("Since the challenged summation remarks were not improper, defense counsel's failure to object to them did not deprive defendant of the effective assistance of counsel." (citing

27

*People v McGowan*, 111 A.D.3d 850, 851 (N.Y. App. Div. 2d Dep't 2013); further citation omitted)).  Moreover, it is unlikely such a showing would have been possible considering the Appellate Court's conclusions that such errors were "harmless because the evidence of defendant's guilt was overwhelming and there was no significant probability that the error contributed to the defendant's conviction."  *Alleyne*, 114 A.D.3d at 805.  This "no significant probability" analysis aligns with *Stickland*'s requisite prejudice prong, which requires one challenging the effectiveness of his counsel's assistance to show "a substantial, not just conceivable, likelihood of a different result," but for the alleged error of counsel.  *Cullen*, 563 U.S. at 189.  Because Petitioner has failed to demonstrate any prejudice suffered by defense counsel's alleged deficient representation, he is unable to show how the Appellate Court's application of *Strickland* was contrary to clearly established federal law.  *See* § 2254(d)(1); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (stating that a petitioner must show "that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner").

     iii.  <u>Failure to Highlight Weaknesses of Gallimore's Identification</u>

  On direct appeal, Petitioner did not raise any argument about defense counsel failing to highlight the alleged weaknesses of Gallimore's identification of Alleyne as a basis for finding he was deprived of his right to effective counsel.  (*See* State Appeal Br. at 32-33.)  That is likely so because, during summation, defense counsel did challenge Gallimore's identification of Petitioner.  (*See* May 26 Trial Tr. (Defense Summation) 176-179.)  By not presenting this argument to the Appellate Court in the first instance, that court was not alerted to this federal claim, thereby depriving that court of the opportunity to pass upon it and correct Petitioner's claim of deprivation of his Sixth Amendment right to effective assistance of counsel.  *See Duncan*, 513 U.S. at 365-66; *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003); *McBride*,

2015 WL 5245072, at *7.  Because it would be offensive to the rule of comity, *see O'Sullivan*, 526 U.S. at 844-45 ("State courts, like federal courts, are obliged to enforce federal law.  Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."), a habeas claim will not be reviewed by a district court unless "the applicant has exhausted the remedies available in the courts of the State."  § 2254(b)(1)(A); *see also* § 2254(c); *McBride*, 2015 WL 5245072, at *6.

Further, as Respondent properly asserts, "[Petitioner] was required to raise th[is] claim[] on his direct appeal because [it] rel[ies] upon facts which appear in the trial record."  (Opp'n at 2.)  *See also, e.g., Aparicio*, 269 F.3d at 91 ("Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals, both of which he pursued long ago." (citing C.P.L. § 450. 10(1); N.Y. Court R. § 500.1), *and* "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." (citing C.P.L. § 440.10(2)(c)); *Acevedo*, 2014 WL 1236763, at *12 (recognizing that New York "state law requires claims to be raised on direct appeal").  He did not do so.  When this occurs, the unexhausted claim should be deemed exhausted, rendering it procedurally barred since the habeas petitioner no longer has a state forum in which to raise the claim.  *See id.* at 90 (citing *Coleman*, 501 U.S. at 735 n.1 (noting a federal habeas court may not review a habeas claim where petitioner "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred")).  Hence, failing to present the instant argument to the Appellate Court, Petitioner's deprivation of effective counsel claim on this basis is procedurally barred from review by this Court.

To overcome this bar to habeas review, the Petitioner must "show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (*i.e.*, the petitioner is actually innocent)." *Id.* (citing *Coleman*, 501 U.S. at 748-50). Petitioner has done neither; nor does the Court's review of the state court record uncover either. *See, e.g., Bellezza v. Fischer*, No. 01-cv-1445, 2003 WL 21854749, at *18 (E.D.N.Y. Aug. 6, 2003) ("Because the required showing of cause and prejudice has not been made with respect to [petitioner]'s procedurally defaulted . . . claim, that claim should be dismissed without reaching the merits."); *see also id.* at *10 (stating that, while "a district court must consider a *pro se* litigant's habeas corpus petition with some liberality, the petitioner still bears the burden of proof" throughout the habeas proceeding) (internal citation omitted).  Accordingly, no review of this branch of Petitioner's ineffective assistance claim will be had.

### iv.  Failure to Request Certain Jury Instructions

In his Petition, other than listing in a conclusory fashion "the absence of ameliorative charges" as a reason he was deprived his "right to effective assistance of counsel" (Petition at 4), Petitioner has not articulated how this alleged deficiency prejudiced him.  An examination of Petitioner's counseled State Appeal Brief, reviewed in aid of liberally construing this contention, *see, e.g., Alonge*, 2019 WL 1642449, at *6, fares no better; other than identifying defense counsel's "fail[ure] to request ameliorative instructions, which would have informed the jury that they were free to reject Ellis's and Parande's lay-opinions that [Petitioner] appeared on the [V]ideo" (State Appeal Br. at 33[11]), appellate counsel did not advance any argument that

---

[11]  On direct appeal, appellate counsel also claimed, in a bald manner, that defense counsel was ineffective for "fail[ing] to request ameliorative instructions, which would . . . instruct the[ jury] that they should not draw any inferences from Carrington's and Bowen's absence from [Petitioner]'s trial." (State Appeal Br. at 33.)  Petitioner has not advanced this "lack of instructions regarding accomplices" argument in Ground 1 of his Petition; rather, he advances

Petitioner was prejudiced by the missing instructions.  In addition to alternatively concluding that Petitioner's argument about Ellis's and Parande's opinion testimony was "without merit," *Alleyne*, 114 A.D.3d at 804 (making an "in any event" determination), the Appellate Court further concluded that the trial court's "fail[ure] to give the appropriate limiting instruction concerning th[at] testimony" was "harmless" error since there was "overwhelming evidence of the [Petitioner]'s guilt, and *no significant probability that the error contributed to the [Petitioner]'s convictions*." *Id.* (emphasis added).  Because the Appellate Court's "no significant probability" determination parallels *Strickland*'s prejudice prong, *i.e.*, requiring showing a reasonable probability that the result of his Robbery trial would have been different if not for counsel's error, *see Strickland*, 466 U.S. at 694, Petitioner's reliance on this "harmless" error to establish his ineffective assistance of counsel claim is unavailing.  More specifically, he has failed to highlight how counsel's failure to request limiting instructions regarding Ellis's and Parande's lay-testimony, would have changed the outcome of the Robbery trial, especially given the ample direct and circumstantial evidence connecting Petitioner to the Robbery and supporting his conviction, *e.g.*, Gallimore's clear, consistent eyewitness testimony, *see*, *e.g.*, *People v. Calabria*, 3 N.Y.3d 80, 82-83 (2004) (holding that where the testimony of a single eyewitness is without conflicts and found to be credible and reliable, such testimony is sufficient to support a criminal conviction), Eastman's corroborating testimony about the Robbery, the 911 calls of Gallimore and Golding, and Golding's corroborating testimony about the Petitioner's appearance and the Getaway Car.  Therefore, there is no basis to conclude that the Appellate

---

that argument in support of his second ground for habeas relief, *i.e.*, the lack of due process afforded him.  (*See* Petition, Ground 2, at 7.)  The Court addresses this argument, *infra*, at Part III(B)(2)(b).

Court's application of *Strickland* was contrary to or an unreasonable application of clearly established federal law.

### (b.)  *The Relevant § 2254 Analysis*

As to each of the arguments advanced by Petitioner in support of his ineffective assistance of counsel claim that are not procedurally barred from review, considering the New York state standard for assessing ineffective assistance of counsel is more protective of a defendant's rights than is the federal *Strickland* standard, *see Rosario v. Ercole*, 601 F.3d 118, 125 (2d Cir. 2010) (recognizing "the New York standard is, in practice and in intent, more generous to defendants then the federal standard"[12]), and "is not contrary to Strickland," *id.* at

---

[12]  In discussing the different ineffective assistance of counsel standards guaranteed under the New York State Constitution and the United States Constitution, the *Rosario* Court stated:

> In New York, even in the *absence* of a showing that but for counsel's errors the outcome would be different, a defendant may still have an ineffective assistance claim under New York's constitution.  Even if the errors are harmless in the sense that the outcome would remain the same, a defendant may still meet the New York prejudice standard by demonstrating that the proceedings were fundamentally unfair.

601 F.3d at 125 (citing *See People v. Stultz,* 2 N.Y.3d 277, 283-84 (2004)).  It further explained that:

> New York has, to some degree, combined the two prongs of *Strickland.*  Prejudice to the defendant, meaning a reasonable possibility of a different outcome, is but one factor of determining if the defendant had meaningful representation.  New York courts look at the effect of the attorney's shortcomings as part of the equation in deciding if the defendant received the benefit of competent counsel.

*Id.*  This comports with the Court of Appeals of New York holding that ineffective assistance of counsel claims brought pursuant to the New York State Constitution are analyzed under a flexible standard to determine whether counsel has provided meaningful representation.  *See Benevento*, 91 N.Y.2d 708, 712 (1998).  "The phrase 'meaningful representation' does not mean 'perfect representation.'"  *People v. Ford*, 86 N.Y.2d 397, 404 (1995), *overruled on other grounds by People v. Peque*, 22 N.Y.3d 168, 194-96 (2013).  Rather, "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the

126, and that, under that standard, which encompasses reviewing "defense counsel's performance in totality," the Appellate Court found "counsel provided [Petitioner] meaningful representation," *Alleyne*, 114 A.D.3d at 805, this Court is hard-pressed to find that the Appellate Court's ensuing application of the *Strickland* standard was objectively unreasonable. *See, e.g., White,* 572 U.S. at 419 (instructing that merely being wrong in application of clearly established federal law is not enough to warrant § 2254 habeas relief; instead, state court's application must be "objectively unreasonable"); *Acevedo*, 2014 WL 1236763, at *13. Indeed, a *de novo* review of the state court record does not suggest any basis for declining to afford the Appellate Court's decision the double degree of deference the Supreme Court requires. *See Harrington*, 562 U.S. at 102 (instructing that issuance of a § 2254 habeas writ warranted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents"). Having construed Petitioner's ineffective assistance of counsel claim in the strongest manner possible, the Court finds he has failed to suggest any reason why the Appellate Court's *Strickland* determination should not be given great deference. *See Cullen*, 563 U.S. at 190 (instructing that, viewed through § 2254(d) deferential lens, review of state court's *Strickland* determination is highly deferential); *see also Whitlock v. LaValley*, No. 13-cv-5772, 2019 WL 3754415, at *17 (E.D.N.Y. Aug. 8, 2019)(discussing double deference due to challenges of *Strickland* determinations raised in § 2254 habeas petitions). Rather, given the overwhelming evidence of Petitioner's guilt, referenced twice by the Appellate Court, it was not unreasonable for the Appellate Court to conclude that Petitioner was not prejudiced by defense

representation, reveal that the attorney provided meaningful representation, the [New York State] constitutional requirement will have been met." *People v. Baldi,* 54 N.Y.2d 137, 147 (1981). Thus, to prevail on a claim of ineffective assistance of counsel predicated upon the New York State Constitution, "defendants must demonstrate that they were deprived of a fair trial by less than meaningful representation." *People v. Flores*, 84 N.Y.2d 184, 187 (1994)(citation omitted).

counsel's errors, because despite said errors, there was no significant probability the errors contributed to Petitioner's convictions.  *Cf., e.g., Harrington*, 562 U.S. at 104 (instructing that counsel's error must be so serious as to deprive the defendant of a fair trial)(citation omitted), at 112 ("The likelihood of a different result must be substantial, not just conceivable.").  Since the Petitioner has not shown, nor can this Court find, that the Appellate Court's application of *Strickland* was so lacking in justification that all fair-minded jurists would agree its application was incorrect, *see White*, 572 U.S. at 427, *i.e.*, that it was objectively unreasonable, this Court must afford that determination the double deference to which it is entitled.  *See Cullen,* 563 U.S. at 190; *see also Aparicio*, 269 F.3d at 93-94 (holding that were ineffective assistance claim was adjudicated on the merits by the state court, habeas review of that decision to be conducted under AEDPA's deferential standards); *id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *see also id.* at 98 (§ 2254(d) deference applies even "[w]here a state court's decision is unaccompanied by an explanation"); *Whitlock*, 2019 WL 3754415, at *17 ("With respect to each branch of petitioner's ineffective assistance of counsel claim, the question for this habeas Court is whether anything in the record or the extensive briefing suggests a basis for declining to afford the state court decision the doubled degree of deference the Supreme Court requires."); *see also Acevedo*, 2014 WL 1236763, at *13 ("To prevail, petitioner must show not only that counsel's performance fell below the *Strickland* standard of reasonableness, but also that the state court's application of the *Strickland* standard was itself unreasonable and not merely incorrect." (citing *Harrington,* 562 U.S. at 101)).  Accordingly, in the absence of a showing of

objective unreasonableness, there is no basis to grant Petitioner habeas relief pursuant to Ground 1 of his Petition.

### 2.  Petitioner's Ground 2:  Deprivation of a Fair Trial and Due Process

Petitioner raises two arguments in support of his contention that he was denied due process and a fair trial pursuant the Fifth and Fourteenth Amendments:  (1) allegedly improper statements made by the prosecution during its summation; and (2) the trial court's failure to issue an ameliorative instruction as to Petitioner's accomplices, neither of whom were on trial.  (*See* Petition at 5-7.)  As will be elucidated, neither provides an avenue to habeas relief.

### (*a.*) *The Prosecution's Alleged Summation Improprieties*

Petitioner alleges that four subcategories of improper statements made by the prosecutor during his summation denied Petitioner due process and a fair trial: (i) appealing to the jurors' fears (*see id.* at 5); (ii) vouching for the strength of the People's evidence (*see id.* at 5-6); (iii) insinuating that Petitioner has the burden of establishing his innocence (*see id.* at 6); and, (iv) misstating "a key piece of evidence" (*id.* at 6; *see also id.* at 7)(hereafter, the "Summation Statements").  However, this argument is procedurally barred; citing to New York Criminal Procedure Law § 470.05(2), the Appellate Division stated that Petitioner's "contention that the prosecutor made improper comments during summation is unpreserved for appellate review, as he failed to object to any of the challenged comments."  *Alleyne*, 114 A.D.3d at 805.  Because "[t]he Appellate Division's ruling that [P]etitioner's claim[] w[as] unpreserved for appellate review constitutes an independent and adequate state ground," *Spurgeon v. Lee*, No. 11-cv-600, 2015 WL 4610021, at 14 (E.D.N.Y. July 31, 2015)(citing *Garcia*, 188 F.3d at 77-79; further citation omitted), this Court is procedurally barred from considering the prosecutor's Summation Statements as a basis for granting the Petition.  *See Downs v. Lape*, 657 F.3d 97, 104 (2d Cir.

2011) ("[W]e have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule."); *Garcia*, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."); *Kozlowski v. Hulihan*, 511 F. App'x 21, 25 (2d Cir. 2013) ("[T]he contemporaneous objection rule provides an independent state-law ground for barring federal habeas review."); *Forino v. Lee*, No. 10-cv-5980, 2016 WL 7350583, at *10 (E.D.N.Y. Dec. 19, 2016) ("It is well-settled that New York's contemporaneous objection rule is an adequate and independent ground that bars federal habeas review."); *Wright v. Lee*, No. 12-cv-6140, 2013 WL 1668266, at *2 (E.D.N.Y. Apr. 17, 2013) (same); *Ortiz v. Bradt*, No. 13-cv-5420, 2013 WL 5775695, at *2 (E.D.N.Y. Oct. 25, 2013)(same).  Further:

> [b]ecause "the Appellate Division properly relied on a procedural bar, [P]etitioner would have to show that grounds exist for reaching the merits notwithstanding that procedural bar." *Ortiz*, 2013 WL 5775695, at *2.  * * *  [T]o overcome this default on state procedural grounds, Petitioner must show "'cause for the default and prejudice' or . . . that he is 'actually innocent' of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (quoting *Aparicio*, 269 F.3d at 90).  Here, Petitioner did not attempt to demonstrate his actual innocence, and there is nothing in the record that convinces the Court that Petitioner is actually innocent of the crimes for which he was convicted.

*Blume v. Martuscello*, No. 13-cv-4310, 2016 WL 1070847, at *11 (S.D.N.Y. Mar. 14, 2016); *see also Murray*, 2016 WL 11600770, at *7.

Even if that were not so, "[p]rosecutorial statements, even though they may be improper or unethical, are usually not enough to warrant granting a [habeas] petition." *Donaldson v. Dalsheim*, 508 F. Supp. 294, 297 (S.D.N.Y.), *aff'd*, 672 F.2d 899 (2d Cir. 1981), *cert. denied*, 455 U.S. 951 (1982); *see also Smith v. Phillips*, 455 U.S. 209, 221 (1982).  Rather, to warrant habeas relief, a prosecutor's summation must be so fundamentally unfair as to deny the petitioner a fair trial.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642-48 (1974); *see also Lyons v.*

36

*Girdich*, No. 02-cv-3117, 2003 WL 22956991, at *12 (E.D.N.Y. Oct. 15, 2003); *Castro v. Sullivan*, 662 F. Supp. 745 (S.D.N.Y. 1987).  In that regard, in addition to its reliance upon New York's contemporaneous objection rule in refusing to review Petitioner's challenge to the Summation Statements, the Appellate Court also citied to *People v. Amico*, 78 A.D.3d 1190, 1191 (N.Y. App. Div. 2d Dep't 2010), a case where the appellate court upheld a criminal conviction that the defendant challenged based upon, *inter alia*, portions of the prosecutor's summation, ruling that the prosecutor's summation statements "constituted fair response to arguments presented in summation by defense counsel, or fair comment on the evidence and the reasonable inferences to be drawn therefrom."  *Amico*, 78 A.D.3d at 1191 (citing *People v Jones*, 76 A.D.3d 716, 717 (N.Y. App. Div. 2d Dep't 2010); *People v Kurney*, 69 A.D.3d 957 (N.Y. App. Div. 2d Dep't 2010)).  The same holds true in the instant case.

The theme of defense counsel's summation was that there was a plan to conspire against Petitioner, which led to his arbitrary arrest and prosecution and which motivated the witnesses' testimony.  (*See* Trial Tr. (Defense Summation) 178-79, 181, 185, 187-88.)  In counsel's efforts to advance this alleged conspiracy theory, he challenged the People's evidence, in particular questioning the credibility of Gallimore and Parande.  The prosecutor's Summation Statements simply "responded to [Petitioner]'s contentions and were appropriate."  *Lyons*, 2003 WL 22956991, at *13; *see also People v. Isaac*, 137 A.D.3d 1164, 1165 (N.Y. App. Div. 2d Dep't 2016)("In any event, the remarks were responsive to arguments and theories presented during the defense summation or constituted fair comment on the evidence." (collecting cases)).

For example, as to the comments supposedly invoking fear, they countered defense counsel's claim that Gallimore was an incredible witness (*see* May 26 Trial Tr. (Defense Summation) 177, 181); the prosecutor first highlighted six opportunities that Gallimore had to

37

observe Petitioner as Petitioner robbed Gallimore (*see id.* (People's Summation) 206) before asking the jurors to imagine themselves in Gallimore's position to help the jury evaluate the accuracy of Gallimore's identification of Petitioner, underscoring that Gallimore was a credible witness who was not mistaken about who robbed him, having had numerous opportunities in a heightened state of awareness to observe Petitioner.  The comments supposedly vouching for the People's evidence arose in response to defense counsel's summation contention that there was little, if any, evidence that Petitioner actually committed the Robbery, and that Gallimore and some of the other testifying witnesses where part of the plan to intentionally and wrongfully accuse Petitioner of the Robbery (*see id.* (Defense Summation) 179, 181, 185, 187-88).  It was fair commentary for the prosecutor to respond that the People had presented substantial evidence of Petitioner's guilt and that Gallimore's testimony was credible.  As for the comment allegedly insinuating it was Petitioner's burden to prove his innocence, the comment that Parande "knows the defendant [and that] [y]ou have not heard any evidence to the contrary" (*id.* (People's Summation) at 201), was made in response to defense counsel's questioning Parande's credibility by implying she was part of the plan to "frame" Petitioner, whom she did not know well.  While, arguably inartful, when viewed in context, said response was offered as fair comment on the evidence.  In any event, since the court instructed the jury that "[t]he burden of proof never shifts from the People to the [Petitioner]" (*see id.* (Jury Charge) 235), any prejudice caused by this comment was cured.  *Cf.*, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."); *see also Murray v. People*, No. 13-cv-5212, 2016 WL 11600770, at *9 (S.D.N.Y. Apr. 4, 2016)("In the absence of any evidence to the contrary, the jurors must be presumed to have followed [the state court judge's] instructions concerning the applicable law.").  Finally, regarding the comment misstating evidence, Respondent admits to

one instance when the prosecutor misstated evidence (*see* Opp'n at 12), *i.e.*, "misstating in his summation that Parande testified to lending her car to Carrington and [Petitioner], while Parande had actually testified that she had only lent her car to Carrington" (*id.* at 16 (citing Trial Tr. (People's Summation) 202; *id.* (Parande Direct Ex.) 82, 89-90)); however, Respondent asserts that the misstatement was not intentional as evidenced by the prosecutor's subsequent remark:

> [Y]ou were told by Janel Parande, that the individual who was in her car, who had possession of her car, was this [Petitioner] and Dawoud Carrington. *Yes, she doesn't know who got into the car with Dawoud – with Dawoud Carrington that morning*. But, she told you what was important . . . .

(*Id.* (quoting Trial Tr. (People's Summation) 212) (emphasis in Opp'n).)  To the extent Respondent implies the unintentionality of this isolated misstatement suggests Petitioner was not denied a fair trial, the Court agrees.  At most, this misstatement would be the type of "ordinary trial error of a prosecutor" which does not amount to the denial of a fair trial. *See Lyons*, 2003 WL 22956991, at *12 (E.D.N.Y.,2003) (quoting *Sales*, 675 F.2d at 541 (finding that People's closing argument, viewed as a whole, did not deprive petitioner of a fair trial; further citation omitted)).  Nor is there anything in the record that suggests the misstatement amounted to misconduct.  Moreover, contrary to the Petitioner's argument that the prosecutor's isolated misstatement regarded "a key piece of evidence pertaining to the [G]etwaway [C]ar" (Petition at 6), it merely addressed one component of Parande's testimony that established her acquaintanceship with Petitioner; it did not, as Petitioner contends, "dramatically enhance" the People's case (*see id.* at 7).  In any event, the prosecutor's subsequent, albeit imprecise, attempt to correct his misstatement diminishes the weight of Petitioner's contention that "the prosecutor's [misstatement] so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Jones v. Poole*, No. 07-cv-951, 2007 WL 2667456, at *5

(E.D.N.Y. Sept. 6, 2007).  That conclusion is fortified by the trial judge's instructions to the jurors that they alone are the "sole and exclusive judges of the facts in th[e] case" and that if counsel "may refer to evidence[,] or what they recall to be the evidence in this case, during summation, . . . [which] differs from [their] recollection, it is always [the jurors'] recollection of the evidence that controls."  (May 23 Trial Tr. 173:17-22; *see also id.* at 173:12-15 ("Bear in mind, members of the jury, nothing that counsels may say in their summations is evidence in this case.  Indeed[,] nothing that I will say in my final instructions will be evidence in this case.").)  In sum, viewed as a whole and in the context of Robbery trial, the Summation Statements where not so egregious as to deprive Petition of due process or a fair trial.

(*b.*) *Lack of Limiting Instructions Regarding Accomplices*

The limiting jury instruction as to accomplices (hereafter, the "Accomplice Instruction") which Petitioner contends should have been given to the jury was not requested by him at the Robbery trial.  Moreover, the Accomplice Instruction issue was presented on direct appeal in the context of Petitioner's argument that he was denied a fair trial by the introduction of Parande's improper bolstering identification testimony about Bowen.  (*See* State Appeal Br., Argument, Point I(C)(2), 28-31.)  Encompassed within that argument, was Petitioner's sub-argument that the trial "court did not issue [the Accomplice I]nstruction addressing either Carrington or Bowen, neither of whom was on trial," asserting that had that instruction been given, "the jury would have likely given less consideration to the prosecution's bolstering arguments."  (State Appeal Br. at 31.)  To the extent Petitioner seeks to parse out his Accomplice Instruction sub-argument here as a separate, independent basis for granting habeas relief, that effort is unavailing since the Appellate Court ruled as "unpreserved for appellate review" Petitioner's contention "that the [trial c]ourt erred in permitting Parande's testimony identifying the second assailant[, *i.e.*,

40

Bowen]." *Alleyne*, 114 A.D.3d at 804. Having made the identical ruling in its preceding

sentence, in the same paragraph, as to related alleged improper bolstering testimony by Ellis,

which ruling cited to New York's contemporaneous objection rule (*see id.* (citing C.P.L. §

470.05(2))), there is no doubt that the Appellate Court was clearly relying upon the State's same

procedural rule in its subsequent ruling on Parande's testimony, *i.e.*, the state court provided an

adequate and independent basis for its ruling. *See Downs*, 657 F.3d at 104 ("[W]e have held

repeatedly that the contemporaneous objection rule is a firmly established and regularly followed

New York procedural rule."). As a consequence, habeas review of this claim is precluded. *See*

*Kozlowski*, 511 F. App'x at 25 ("[T]he contemporaneous objection rule provides an independent

state-law ground for barring federal habeas review."); *Forino*, 2016 WL 7350583, at *10 ("It is

well-settled that New York's contemporaneous objection rule is an adequate and independent

ground that bars federal habeas review.").

　　　Even if that was not the case, Petitioner's Accomplice Instruction argument would be

insufficient to warrant the granting of habeas relief. Generally, when challenging jury

instructions, a "petitioner must show not only that the instruction misstated state law but also that

the error violated a right guaranteed to him by federal law." *Gibbs v. Donnelly*, 402 F. App'x

566, 568 (2d Cir. 2010) (citing *Davis v. Strack,* 270 F.3d 111, 123 (2d Cir. 2001)); *see also*

*Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990) (holding that for an erroneous state jury

charge to result in a federal constitutional deprivation that may be eligible for habeas relief, "the

ailing instruction by itself [must have] so infected the entire trial that the resulting conviction

violates due process" (further citation omitted)); *Forino*, 2016 WL 7350583, at *6; *Norwood v.*

*Artis*, 487 F. Supp.2d 321, 332-34 (W.D.N.Y. 2007) ("[T]he trial court's failure to issue a

properly requested jury charge does not, standing alone, violate petitioner's right to due process."

(citations omitted)).  The Court agrees with Respondent that "the trial court did not improvidently abuse its discretion" by not charging the jury with the Accomplice Instructions. (Opp'n at 20 (citing C.P.L. § 300.10(2)).)  Review of the state court record demonstrates the trial judge adequately informed the jury of the law, properly conveying the correct principles to be applied in evaluating the evidence before it when it instructed the jury, *inter alia*, that:

> Evidence consists of the sworn testimony elicited both on direct and cross examination and any redirect and recross that followed of all the witnesses that testified in this trial, pus any exhibits marked and introduced into evidence, plus any stipulations entered into between the parties.  *It is only on the basis of this evidence that you are to make your final determination of the facts*.

(Trial Tr. (Jury Charge) 225 (emphasis added).)  *See generally, People v. Levy*, 15 N.Y.3d 510 (2010) (affirming conviction where defendant challenged, *inter alia*, trial court's refusal to give requested jury instructions where, in denying requested instructions, the trial judge ruled the purpose of jury instructions "is to provide the law as basic and as simple as possible [while] containing all the necessary elements" of the charged crime; *People v. Hohl*, 93 A.D.3d 859, 860-61 (N.Y. App. Div. 2d Dep't 2012) (where certain instructions were not included, ruling that "the charge, taken as a whole, adequately instructed the jury as to the fundamental legal principles applicable to criminal cases in general and the material legal principles applicable to this particular case" and "[t]he fact that the [trial c]ourt may not have used the precise wording requested by the defendant did not invalidate the court's charge or violate the defendant's due process rights" (citing C.P.L. § 300.10(2); further citations omitted)).  Petitioner has not shown, nor can the Court find, how the lack of delivering the non-requested Accomplice Instruction resulted in a misstatement of the law that so infected the entire Robbery trial or otherwise prejudiced Petitioner.  *See, e.g.*, *Blazic v. Henderson,* 900 F.2d 534, 541 (2d Cir. 1990) ("For an erroneous state jury charge to result in a federal constitutional deprivation, 'the ailing instruction

by itself [must have] so infected the entire trial that the resulting conviction violates due process."' (quoting *Cupp v. Naughten,* 414 U.S. 141,147 (1973)); *c.f., United States v. Coplan*, 703 F.3d 46, 87 (2d Cir. 2012)("A defendant challenging a district court's refusal to give a requested jury instruction carries the 'heavy burden . . . . [of showing] that his proposed charge accurately represented the law in every respect, and that the charge actually given, viewed as a whole, prejudiced him.'" (quoting *United States v. Feliciano,* 223 F.3d 102, 116 (2d Cir.2000) (internal quotation marks omitted)).  Further, neither Petitioner's speculation that had the jury been instructed about his missing co-defendants, it "would have likely given less consideration to the prosecutor's bolstering arguments" (Petition at 7-8), nor his conjecture about the "pro[b]able cum[u]lative effect upon the jury" of the prosecution's alleged misconduct (*id.* at 8) establishes a denial of due process or a fair trial.  Therefore, in the absence of demonstrating a violation of his constitution rights, Petitioner is not entitled to § 2254 habeas relief on the argument presented.

IV.   <u>Conclusion</u>

Accordingly, finding the Petitioner has not demonstrated any basis for relief under 28 U.S.C. § 2254, IT IS HEREBY ORDERED that the Petition is DENIED.  Further, since Petitioner has failed to make a substantial showing of the denial of a constitutional right, no certification of appealability shall issue.  *See* 28 U.S.C. § 2253(c)(2); *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez,* 129 F.3d 255, 260 (2d Cir. 1997); *Richardson v. Greene,* 497 F.3d 212, 217 (2d Cir. 2007) (discussing the standard for issuing a certificate of appealability).  Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith, and, therefore, in *forma pauperis* status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  Within five business days of the date of this Order,

Respondent shall serve a copy of this Memorandum and Order upon Petitioner at his updated address and file a declaration of service.  Once Respondent files proof of service, the Clerk of Court is directed to: dismiss the Petition; enter judgment in favor of Respondent; serve the judgment on Petitioner at his updated address; note service on the docket; and, close this case.

SO ORDERED this 28th day of May 2020 at Central Islip, New York.

/s/  *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge